# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA BURKS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:20-00069-KD-C** |
| | ) | |
| **COASTAL ALABAMA COMMUNITY** | ) | |
| **COLLEGE,** | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Burks' motion to amend her complaint (Doc. 13) with proposed amended complaint (Doc. 13 at 7-23) and Coastal's response (Doc. 15). Also before the Court is Coastal's motion to dismiss (Doc. 5), Burks' response (Doc. 9), and Coastal's reply. (Doc. 10).

## I.    Background

Plaintiff Laura Burks (Burks) began working for non-party Faulkner State Community College (Faulkner) in 1993 primarily in the Human Resources office. (Doc. 1 at 3). In the fall of 2016, Faulkner was consolidated with two other community colleges and together these colleges became Defendant Coastal Alabama Community College (Coastal). (Id. at 4). Thereafter, in January 2017, Burks became the Vice President of Human Resources. (Id.). On November 27, 2017, Burks discovered that her only child tragically died. (Id.). Thereafter, Burks experienced medical problems and was diagnosed with post-traumatic stress disorder. (Id.). Burks sought workplace accommodations as a result. (Id.). Eventually, on November 6, 2018, Burks was terminated.

On February 6, 2020, Burks initiated this discrimination action against Coastal, alleging five (5) counts as follows: Rehabilitation Act discrimination (Count One— 29 U.S.C. §§ 701, 794); Rehabilitation Act retaliation (Count Two— 29 U.S.C. §§ 701, 794); ADA discrimination (Count Three—42 U.S.C. § 12102); FMLA interference and retaliation (Count Four—29 U.S.C. § 2601); and violations of her Fourteenth and First Amendment rights under Section 1983 (Count Five—42 U.S.C. § 1983).   (Doc. 1 at 1-20).   On March 5, 2020, in response and pursuant to Fed.R.Civ.P. 12(b)(6), Coastal moved to dismiss Burks' ADA, FMLA and Section 1983 claims against it on the basis of Eleventh Amendment immunity and for failure to state a claim; and to dismiss Burks' punitive damages demand for Rehabilitation Act violations.  (Doc. 5). As grounds, Defendant explains that as an Alabama community college, it is a governmental entity and arm of the State of Alabama, and thus is protected by Eleventh Amendment immunity from suit.

On April 1, 2020, after conducting a hearing on Coastal's partial motion to dismiss, Magistrate Judge Cassady ruled that Burks shall have opportunity to file a motion for leave to amend the Complaint prior to entry of a Report and Recommendation.  (Docs. 12, 14).  As such, Burks' motion for leave to amend her complaint was filed in response to the Court's instruction for same.[1]

---

[1] Otherwise -- Rule 15 of the Federal Rules of Civil Procedure provides distinct avenues for amending complaints.  Rule 15(a) provides for amendments as a matter of course within a 21-day time frame. The original complaint was filed on February 6, 2020.  (Doc. 1).  Thus, the time for amending as a matter of right has expired.  As such, the only vehicle for amending the complaint is Rule 15(a)(2) -- amendment outside of the 21-day window. See e.g., Murphy v. Secretary, U.S. Department of Army, 769 Fed. Appx. 779, 783 (11th Cir. 2019) ("Once 21 days have passed since filing a complaint, a party may amend her pleading only with the opposing party's written consent or the court's leave[]").  Additionally, Rule 15(a)(2) states "[t]he court should freely give leave when justice so requires."  And "[t]here must be a substantial reason to deny a motion to amend." Laurie v. Ala. Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001). The Court "may consider several factors...including 'undue delay, bad faith or dilatory motive [on the part of the movant], repeated failure to cure deficiencies...undue prejudice to the opposing party...[and] futility...." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340-1341 (11th Cir. 2014).

Burks seeks to amend her complaint to add as new individual Defendants: 1) President Craig Pouncey, in his official capacity as President of Coastal, and in his individual capacity; 2) Patty Hughston, in her official capacity as Interim President of Coastal A, and in her individual capacity; and 3) Keith Brown, in his official capacity as Acting President of Coastal, and in his individual capacity. Specifically, to add claims against these new individual Defendants "under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., and under Section 504, 29 U.S.C. § 794, in particular, and the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S. §1983 and 1988. Plaintiff … seeks permanent relief, including reinstatement, from the unlawful discriminatory practices involving the terms and conditions of her employment by the Defendants." (Doc. 13 at 7-19 (proposed amended complaint (Counts One and Two and Three)). Moreover, Burks seeks to amend her complaint to remove her ADA and FMLA claims against Coastal (Counts Three and Four). (Doc. 13 at 1, 4).

In response, Coastal does not oppose the amendment as to Burks' removal of her ADA and FMLA claims (Doc. 15 at 1). However, Coastal opposes Burks' amending the complaint to add new defendants, and to maintain her Section 1983 claims against any defendants.

## II.   <u>Motion to Amend the Complaint</u>

At the outset, Burks' motion to amend was not filed with Coastal's consent. And Coastal only consents partially, namely to Burks' removal of her ADA and FMLA claims. As to remaining proposed amendments, Coastal claims futility and Rule 12(b)(6) grounds to argue for denial of same.

Leave should be freely given "when justice so requires," except in the presence of countervailing factors such as undue prejudice to the opposing party and futility of the amendment.

See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Bartronics, Inc. v. Power-One, Inc., 245 F.R.D. 532, 534 (S.D. Ala. 2007). Therefore, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[.]" City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1286 (11th Cir. 2015) (citation omitted). Courts "may consider several factors when deciding whether to grant a motion to amend, including 'undue delay, bad faith or dilatory motive [on the part of the movant], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340–1341 (11th Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962); Donley v. City of Morrow, Ga., 601 Fed. Appx. 805, 810 (11th Cir. 2015) (same)).

The record does not indicate any instance of undue delay, bad faith, dilatory motive and/or repeated failure to cure deficiencies by prior amendments by Burks. And Coastal does not claim undue prejudice. Coastal contends only that the remaining amendments are futile.

The Court "may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." Christman v. Walsh, 416 Fed.Appx. 841, 844 (11th Cir. 2011); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007); Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (if the proposed amended complaint could not survive scrutiny under Rule 12(b)(6), then allowing the amendment would be futile and the motion for leave to amend should be denied); Hatcher v. Alabama Dep't of Human Services, 2018 WL 4151171, *2 (11th Cir. 2018) ("'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile,' such as 'when the complaint as amended is still subject to dismissal' ....")

(citations omitted). To reach a decision, the Court must accept "the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Nunez v. J.P. Morgan Chase Bank, 2016 WL 1612832, *1 (11th Cir. 2016) (quoting Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011) ). "To survive a motion to dismiss, a complaint need only contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face' and must 'raise a right to relief above the speculative level.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007)).

A.    **Defendants Pouncey, Hughston & Brown - Rehabilitation Act Claims**

1.  **Individual Capacity Claims**

Coastal contends that it is futile to permit Burks to amend her complaint to add individual capacity claims under the Rehabilitation Act against Defendants Pouncey, Hughston and Brown, because as a matter of law these defendants "will not survive a challenge under Rule 12(b)(6)[.]" (Doc. 15 at 1, 3). Per Coastal, "such claims are futile because "the Rehabilitation Act does not provide for individual liability." (Id. at 3). Coastal is correct. The Eleventh Circuit has held that "there is no individual capacity liability under....the ...RA." Badillo v. Thorpe, 158 Fed. Appx. 208, 211 (11th Cir. 2005).  See also Buford v. Alabama Dept of Corr., 2020 WL 1901070, *2 (S.D. Ala. Jan. 9, 2020) (same). As such, that portion of Burks' motion to amend seeking to add individual capacity claims under the Rehabilitation Act against Pouncey, Hughston and Brown is futile, and is accordingly **DENIED.**

2.  **Official Capacity claims**

To the extent Burks also seeks to amend her complaint to assert Rehabilitation Act claims against the individual Defendants in their official capacities, such amendment is also due to be

5

denied as futile. Official capacity suits are suits against the state agencies—not suits against the individuals through whom agencies act. The Eleventh Circuit explained:

> The Supreme Court has said that official capacity suits represent "only another way of pleading an action against an entity of which an officer is an agent," and a victory against a named individual in an official capacity suit is "a victory against the entity that employs him." [*Kentucky v.*] *Graham,* [473 U.S. 159, 167–68 (1985)]. Thus, to impose *official* liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents.

Hobbs v. Roberts, 999 F.2d 1526, 1530 (11th Cir. 1993); Ginwright v. Department of Revenue of Alabama, 2013 WL 1187943, *3 (M.D. Ala. 2013) (citing Hobbs, 999 F.2d at 1530). Because Burks also named Coastal in her Rehabilitation Act claims, the same claims against the individual Defendants in their official capacities would be duplicative. Ginwright, 2013 WL 1187943 at *3 (finding claims against individual defendants in their official capacities duplicative of claims against the other defendant-- Alabama Department of Revenue). And see Simpson v. State, 2016 WL 820946, 8 (N.D. Ala. 2016) (citing Ginwright, 2013 WL 1187943, at *3-4) (same). Thus, Burks' motion to amend her complaint to assert Rehabilitation Act claims against the individual Defendants in their official capacities are futile and accordingly **DENIED**.

## B.   <u>Section 1983 Claims Against the Individual Defendants</u>

Pursuant to Section 1983, Burks alleges "defendants"[2] violated two provisions of the Constitution. Specifically, Burks alleges: 1) she was "treated differently than similarly situated employees who are not disabled"; and 2) her right to free speech and to petition the government

---

[2] Another deficiency in the proposed amended complaint is Burks' failure to delineate what specific actions of each defendant violated her rights.

under the First Amendment was violated when she was terminated because she requested an accommodation for her disability.

1. **1983 Fourteenth Amendment Claims against Defendants Pouncey, Hughston & Brown in Their Individual Capacities**

The Eleventh Circuit holds that to the extent a plaintiff seeks to hold defendants "individually liable under § 1983, 'a plaintiff cannot maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is the [plaintiff's] rights created by the Rehabilitation Act and the ADA.'" [ ] Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997)." Badillo, 158 Fed. Appx. at 213 (footnote omitted). Coastal relies on Holbrook for the contention that Burks' 1983 claims against the individual Defendants is futile. (Doc. 15 at 4-5). But, Holbrook "forecloses an action under Section 1983 based solely on rights created by the ADA" or the Rehabilitation Act. McNa v. Commc'ns Inter-Local Agency, 551 F.Supp.2d 1343, 1348 (M.D. Fla. 2008). See Harris v. Atlanta Independent School System, 2009 WL 10665027, *10 (N.D. Ga. 2009) (plaintiff "cannot bring a Section 1983 claim on the basis that [Coastal] violated her rights under the ADA" or Rehabilitation Act).

Burks' Section 1983 disability claim is brought pursuant to the Fourteenth Amendment Equal Protection Clause, not the ADA or Rehabilitation Act. As a result, the holding in "Holbrook is inapplicable to Burks' Section 1983 equal protection disability claims because by alleging that Defendant[s] violated [her] rights under the Equal Protection Clause, [Burks] is not relying on the protections of the ADA [or Rehabilitation Act] to assert [her] Section 1983 disability discrimination claims." Harris, 2009 WL 10665027 at *10. And see McNa, 551 F.Supp.2d at 1348

("<u>Holbrook</u> did not decide whether a plaintiff alleging disability discrimination may simultaneously proceed under Section 1983 for constitutional claims relating to the same discrimination."). See <u>Kruger v. Jenne</u>, 164 F.Supp.2d 1330, 1339 (S.D. Fla. 2000) ("<u>Holbrook</u> did not hold a plaintiff may not simultaneously maintain causes of action under § 1983 and the ADA… [a] litigant may do so as long as the § 1983 claims are based on independent causes of action" like Eighth Amendment violations).

However, Burks' claim suffers from other fatal deficiencies. Burks alleges the following in support of her Equal Protection claim: "Under the Equal Protection clause of the Fourteenth Amendment of the United States Constitution, Plaintiff has a right in her employment with the College to be free of disability discrimination and retaliation for opposing disability discrimination…. Plaintiff was treated differently than similarly situated employees who are not disabled and have not advocated on behalf of themselves related to their disability. Said treatment concerned her termination and the refusal to reinstate Plaintiff…."  (Doc. 13 at 19-20). Putting aside the legal inaccuracies of the first allegation, Burks' allegations fail to state a cause of action against the individual Defendants under the Equal Protection clause. If Burks is attempting to allege an Equal Protection claim based on Defendants' treatment of a specific class, she has failed to adequately do so. First, Burks does not allege she was discriminated against because she is a member of a constitutionally protected class. Rather, Burks alleges she was terminated because her disability prohibited her from adequately performing her job without accommodations and her requests for accommodations were denied. (Doc. 13 at 13 ("[D]eficiencies in Ms. Burks's performance were a direct result of Ms. Burks's disability and the College's failure to provide accommodations or the necessary assistance.")). "States are not required by the Fourteenth

8

Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly— and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 367–68, 121 S. Ct. 955, 964, 148 L. Ed. 2d 866 (2001).

And if Burks is attempting to allege a class-of-one employment claim because of her disability, such is not recognized. As explained in Alford v. Consol. Gov't of Columbus, Ga., 438 Fed.Appx. 837 (11th Cir. 2011):

> The Equal Protection Clause of the Fourteenth Amendment generally requires government entities to treat similarly situated individuals alike. *Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1313 (11th Cir.2006). In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin. *See Engquist,* 553 U.S. at 594–95, 128 S.Ct. 2146; *Sweet v. Sec'y Dep't of Corr.,* 467 F.3d 1311, 1318–1319 (11th Cir.2006) (noting a plaintiff typically must allege that he was treated differently "based on race, religion, national origin, or some other constitutionally protected basis" to establish an equal protection claim). In a "class of one" equal protection claim, however, a plaintiff does not allege discrimination against a protected class or on account of membership in a particular group, but rather, asserts that he has been treated differently from others similarly situated for arbitrary or irrational reasons. *See Engquist,* 553 U.S. at 595–97, 128 S.Ct. 2146; *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1306 (11th Cir.2009).
>
> In *Engquist*, a state employee alleged she had been effectively laid off for "arbitrary, vindictive, and malicious reasons." 553 U.S. at 594–95, 128 S.Ct. 2146. Without qualification or expressed limitation, the Supreme Court broadly held "such a 'class-of-one' theory of equal protection has no place in the public employment context." *Id.* at 594, 128 S.Ct. 2146. The Court concluded that, while "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently," it has no application when "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.* at 605, 128 S.Ct. 2146.

9

Alford, 438 Fed.Appx. at 839–40. See also Dellafosse v. Cty. of Contra Costa, No. C-07-3948 MMC, 2008 WL 823805, at *2 (N.D. Cal. Mar. 27, 2008) ([I]f plaintiff's claim is premised on the theory that she was discriminated against because of animus on account of her alleged disability, plaintiff cannot state a claim under the Equal Protection Clause); Lauth v. McCollum, 424 F.3d 634 (7th Cir.2005) (defining "class-of-one" as plaintiff "who does not belong to any 'suspect' (that is, favored) class"); Doe v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996) ("For the purposes of equal protection analysis, the disabled do not constitute a suspect class."); Sharer v. Oregon, 481 F.Supp.2d 1156, 1162–63 (D. Ore. 2007) (Plaintiff could not proceed with equal protection claim against public employer where plaintiff alleged she was terminated because of disability).

## 2.   1983 First Amendment Claims against Defendants Pouncey, Hughston & Brown in Their Individual Capacities

Burks' Section 1983 claims also allege that:

> She had a right under the First Amendment of the United States Constitution to freedom of speech and to petition the government for a redress of grievances.

(Doc. 13 at 19; Doc. 1 at 18 (same)). As discussed *supra*, Burks may bring a 1983 claims alleging First Amendment violations without such claims being duplicative of her Rehabilitation Act claims. See e.g., Wright v. City of Tampa, 998 F.Supp. 1398, 1404 (M.D. Fla. 1998) (finding plaintiff established an independent basis for her Section 1983 claims in part because of allegations of First Amendment violations). Burks amended Section 1983 First Amendment argument is twofold—she asserts First Amendment rights "to freedom of speech and to petition the government for a redress of grievances." (Doc. 13 at 19).

### a.   *Freedom of speech*

In the proposed amended complaint, Burks alleges Defendants Pouncey, Hughston, and Brown violated her First Amendment rights when they retaliated against her for requesting accommodations, advocating on behalf of herself related to her disability, exercising protected speech rights, and/or opposing discriminatory practices. (Doc. 13 at 21). Burks' amended complaint also asserts:

> Plaintiff was terminated for requesting accommodations related to her disability and for complaining about her treatment by College employees related to her disability.

> Defendants discriminated and retaliated against the Plaintiff in that they terminated her employment for seeking accommodations for her disability and for advocating on her own behalf to receive accommodations and/or services for her disability…

(Id. at 17, 19-20).

Burks' First Amendment claim is governed by a four-part analysis. Moss v. City of Pembroke Pines, 782 F.3d 613, 617 (11th Cir. 2015) (citing Carter v. City of Melbourne, Fla., 731 F.3d 1168 (11th Cir. 2013). First, the Court considers whether Burks' speech was made as a citizen and whether it implicated "a matter of public concern." Carter, 731 F.3d at 1168-69 (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)). These first two questions are "questions of law that are decided by the Court." Moss, 782 F.3d at 618 (citing Battle v. Bd. of Regents for Ga., 468 F.3d 755, 760 (11th Cir. 2006)). Only if this threshold requirement is met will the Court "weigh [Burks'] First Amendment interests against [Coastal's] interest in regulating [her] speech to promote 'the efficiency of the public services it performs through its employees.'" Id. at 618 (quoting Rankin, 483 U.S. at  384).

Determining whether Burks spoke as a citizen turns on whether the speech "owes its existence to a public employee's professional responsibilities." Garcetti v. Ceballos, 547 U.S. 410,

421-22 (2006). The phrase "must be read narrowly to encompass speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1162 (11th Cir. 2015).

Burks' proposed amended complaint does not address in what capacity she spoke.  Because Burks' complaint is "void of even a conclusory allegation as to the capacity in which" Burks requested accommodations, advocated on behalf of herself, exercise protected speech rights, and/or opposed discriminatory practices, her motion to amend is futile. Pacheo v. School Board of Miami-Dade County, 2011 WL 13223527, *2 (S.D. Fla. 2011) (finding dismissal warranted); (Doc. 13 at 21). Compare with Chustz v. City of Marco Island, 2019 WL 277705 at *3 (M.D. Fla. 2019) ("Chustz has adequately pled that his speech was made as a private citizen, it was not within his ordinary job duties, and it was a matter of public concern…This is enough.").

Moreover, Burks' motion to amend to assert a free speech claim is futile because there are no facts alleged which would support even an inference that her individual and personal request for an accommodation was a matter of public concern. In support of her motion to amend, Burks makes a blanket assertion that her speech "may be 'fairly characterized as constituting speech on a matter of public concern.'" (Doc. 13 at 21).  The proposed amended complaint then references the following:

1) "She requested workplace accommodations…includ[ing] a modified work schedule, medical leave, additional staff assigned to her office, and assistance from other staff. (Doc. 13 at 9-10)

2) "Ms. Burks submitted weekly reports to Acting President Rhodes indicating her medical needs and advising him of the discrimination that she was facing because of her disability…" (Id. at 11).

3) "On October 23, 2018, Ms. Burks notified Bitzer and Sylvester that her condition had worsened as a result of the College's, and specifically Sylvester's, demands. Ms. Burks notified Bitzer and Sylvester that she required medical intervention and immediately left the College for an emergency medical visit." (Id.)

Thus, Burks' First Amendment claim rests on workplace accommodation requests, weekly reports indicating medical needs/disability discrimination, and an October 23, 2018 notification to her employer regarding the status of her medical condition (an emergency need). Apart from that, Burks raises a generalized assertion that Defendants retaliated against her for "opposing discriminatory practices."

Speech involves a matter of public concern if the "content, form, and context" of the speech can "be fairly considered as relating to any matter of political, social, or other concern to the community." Cook v. Gwinnette County School Dist., 414 F.3d 1313, 1319 (11th Cir. 2005). See also Anderson v. Burke County, Ga., 239 F.3d 1216, 1220 (11th Cir. 2001) (discussing union leader's distribution of a questionnaire addressing grievance procedures, vacations, promotions, and benefits to candidates for political office); Maples v. Martin, 858 F.2d 1546, 1552 (11th Cir. 1988) (addressing public school employee claim of free speech). The court must look at the each instance of alleged speech in the record and determine whether the speaker's purpose was to raise issues of public concern or if her purpose was to further her own private interest. Gonzalez v. Lee County Housing Authority, 161 F.3d 1290, 1297 (11th Cir. 1998); Connick v. Myers, 461 U.S. 138, 149 (1983) (evaluating each question on a questionnaire); Anderson, 239 F.3d at 1220 (analyzing each question on questionnaire to potential elected officials); Gonzalez, 161 F.3d at 1297 (11th Cir. 1998) (evaluating each part of a letter and finding one part arguably a matter of public concern). If even one portion of the speech in question "relate[s] to the political, social or

13

other interests of the community," a court may accept that a plaintiff's speech reflects a matter of public concern. Anderson, 239 F.3d at 1220 (finding a questionnaire reflected a matter of public concern where three matters of public interest were addressed despite it also addressing numerous personnel issues, not a matter of public concern). "A public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." Boyce v. Andrew, 510 F.3d 1333, 1344 (11th Cir. 2007) (citing Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986)).

The Court has been unable to find any case law indicating that Burks' foregoing alleged instances of First Amendment retaliation concern matters of public concern. Rather, the Court has found the contrary, indicating that she has not alleged a plausible claim. Holbrook, 112 F.3d at 1530 (finding plaintiff's ante litem claim for discrimination on the basis of his disability was not a matter of public concern because the notice complained "solely" of plaintiff's personal grievances). "An employee's speech will rarely be entirely private or public" and even if the speech "contains public concern aspect," it nonetheless can concern an employee's private interests. Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993). Private interests include "speech largely focused on how [the supervisor] behaved toward [the plaintiff]…how that conduct affected [plaintiff's] work." Id. at 755. Private interests also include complaints about workloads and requests to improve work environments. Boyce, 510 F.3d at 1346 (finding employees complaints to supervisors about work load to be private interest). And see Selimovic v. DeKalb County School District, 2010 WL 11508293, *5 (N.D. Ga. 2010) (finding plaintiff's motion to amend futile where he alleged he complained repeatedly to School District personnel about being discriminated against or treated unfairly in not receiving positions); Morgan v. Ford, 6 F.3d at 754-55 (holding

14

that the plaintiff's complaints of sexual harassment were not a matter of public concern for First Amendment retaliation claim where "speech largely focused upon how [the plaintiff's supervisor] behaved toward her and how that conduct affected her work," and her speech was "in the form of complaints to official bodies" not communicated to the public), cert. denied, 512 U.S. 1221 (1994). Burks' alleged instances of First Amendment retaliation fit within the parameters of what has been deemed to concern private interests. As such, Burks' First Amendment retaliation allegations, based on these instances, do not overcome the futility standard.

The Court next turns to Burks' generalized allegation that she opposed discriminatory practices.  The record is silent as to what and how Burks opposed discriminatory practices. At best, the Court refers (again) to the weekly reports about her medical needs and the discrimination she faced; requests for accommodations for herself; and updates on her medical conditions. (Doc. 13 at 9-11). Burks' amended complaint indicates her communications with Defendants were made to official bodies and individuals within Coastal.  However, Burks does not allege that she "relate[d] her concerns about [disability discrimination] to the public, or attempt to involve the public in any manner." See Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (finding plaintiff's sexual harassment complaints not matters of public concern when plaintiff did not make her complaints public or involve the public); compare with Tindal v. Montgomery County Commission, 32 F.3d 1535, 1537 (11th Cir. 1994) (finding plaintiff's testimony in a federal court to be public and a matter of public concern). In Watkins v. Bowden, 105 F.3d 1344, 1346-48 (11th Cir. 1997), the Eleventh Circuit affirmed the district court's grant of a directed verdict on plaintiff's First Amendment Claim. On appeal, the Eleventh Circuit Court of Appeals concluded plaintiff's private complaints to her supervisors about the harassment [(race and sex discrimination)] to which she

was subjected did not constitute a matter of public concern. Id. at 1352. The Eleventh Circuit

explained:

> ... Watkins [the plaintiff] lodged her complaints to Howard privately and
> informally, and those complaints focused primarily on how her colleagues
> "behaved toward her and how that conduct affected her work." *Morgan,* 6 F.3d at
> 755. Moreover, Watkins's discussions with Blum, Adams, and Dr. Moore did not
> draw the public at large or its concerns into the picture. *Morgan,* 6 F.3d at 755.
> Indeed, Dr. Moore's testimony revealed that he initiated their discussions about the
> office's environment. Furthermore, Watkins's expression of concern over her
> colleagues' treatment of Emken was made in her capacity as employee, rather than
> in her "role as citizen." *Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir.1988).

Id. at 1353-54. So too here, Burks does not allege facts to support that her speech drew the public

at large or its concerns into the picture. Burks' motion to amend seeking to bring the First

Amendment freedom of speech claim against the individual Defendants is futile and is accordingly

**DENIED.**

### b. *Petition the Government for a Redress of Grievances*

The First Amendment guarantees "the right of the people…to petition the Government for

a redress of grievances." U.S. Const., amend. I. "The Petition Clause of the First Amendment

'protects people's rights to make their wishes and interests known to government representatives

in the legislature, judiciary, and executive branches.'" Atlanta Independent School System v. S.F.

ex rel. M.F., 740 F.Supp.2d 1335, 1355 (N.D. Ga. 2010) (citing Biddulph v. Mortham, 89 F.3d

1491, 1496 (11th Cir. 1996)).

The Eleventh Circuit applies "the same legal threshold question to a public employee who

argued that he had been terminated in retaliation for exercise of his right to petition the government

as we did to an employee who asserted that he had been terminated for his speech." D'Angelo v.

School Bd. of Polk County, Fla., 497 F.3d 1203, 1211 (11th Cir. 2007). In applying that threshold

16

to a plaintiff's right to petition the government allegation, the Eleventh Circuit asked whether the "public employee's petition…address[ed] a matter of public concern." Grigley v. City of Atlanta, 136 F.3d 752, 755-56 (11th Cir. 1998). This analysis again asks whether "the public employee made his petition both on a matter of public concern and as a citizen." D'Angelo, 497 F.3d at 1211.

Burks does not identify what or how she petitioned. Presumably, the petition refers to her complaints to supervisors as delineated *supra* and her demand to be reinstated. Again, there are no allegations to support any contention that any petition was a matter of public concern or was given in a capacity as a public citizen. Accordingly, Burks' motion to amend to bring a claim of denial of right to petition the government pursuant to the First Amendment is futile and is accordingly **DENIED.**

### III.   Motion to Dismiss Counts 3-5 of Original Complaint (Doc. 5)

#### A.   Section 1983 Claims Against Coastal (Count 5)

Burks Section 1983 claims against Coastal are due to be dismissed because Alabama colleges are arms of the State and the State is immune to suits under Section 1983. As explained in Doe v. Univ. of Alabama in Huntsville, 177 F. Supp. 3d 1380, 1386–87 (N.D. Ala. 2016):

> The Eleventh Amendment to the Constitution of the United States provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir.1990) (citing *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).
>
> There are two exceptions to Eleventh Amendment immunity: First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87

17

L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *1387 *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).*Carr*, 916 F.2d 1521, 1524–25 (11th Cir.1990) (internal footnote omitted). Neither exception applies here. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Quern v. Jordan*, 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). And the State of Alabama has not waived its immunity. *See* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). The Court must dismiss the § 1983 claim against UAH as a matter of law. No amount of discovery will change this result…. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[A] suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment" regardless of the nature of the relief sought.); *Shuler v. Bd. of Trustees of Univ. of Ala.*, 480 Fed.Appx. 540, 544 (11th Cir.2012) (finding no error in district court's decision to grant judgment in favor of UAB on plaintiff's § 1983 claims because the Board is entitled to Eleventh Amendment immunity); *Eubank v. Leslie*, 210 Fed.Appx. 837, 844 (11th Cir.2006) (holding that "The University of Alabama Board of Trustees is a state agency" and finding that "the district court did not err in dismissing [the plaintiff's] claim for injunctive relief on Eleventh Amendment immunity grounds").

**B.** **Count 3 (ADA) and Count 4 (FMLA)**

Coastal also enjoys Eleventh Amendment immunity from all forms of relief from Burks' ADA and FMLA claims. The Court adopts the reasoning of Coastal in their brief (Doc. 5 at 5-7) and finds that Burks' ADA and FMLA claims are due to be dismissed.

**IV.** **Conclusion**

Upon consideration, Plaintiff Burks' motion for leave to amend the complaint is **DENIED** as futile. The motion to dismiss (Doc. 5) is **GRANTED** as to Count three, four and five of the complaint. (Doc. 1).

**DONE** and **ORDERED** this the **19ᵗʰ** day of **June 2020.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**